UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PABLO COLON (M-55510), | |
| Petitioner, | No. 20 C 1225 |
| v. | Judge Thomas M. Durkin |
| TERI KENNEDY, | |
| Respondent. | |

MEMORANDUM OPINION AND ORDER

Petitioner, Illinois prisoner Pablo Colon, through counsel, petitions this Court for federal habeas corpus relief under 28 U.S.C. § 2254. Challenging his Cook County conviction for first-degree murder, Petitioner argues: (1) he received insufficient warnings in accordance with *Miranda v. Arizona*, 384 U.S. 436 (1966), before his videotaped confession to police officers; and (2) his 40-year imprisonment sentence is unconstitutional. Respondent has responded, and Petitioner has replied. For the reasons below, this Court denies the § 2254 petition on the merits, and declines to issue a certificate of appealability.

BACKGROUND

The background facts are taken primarily from the Illinois appellate court opinion in Petitioner's direct appeal. *People v. Colon*, 2018 IL App (1st) 160120. "We take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review and [Petitioner] has not rebutted this presumption." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28

U.S.C. § 2254(e)(1)). The Illinois Appellate Court summarized the trial evidence as follows:

> In sum, the State's evidence at trial established that on May 29, 2010, at midnight, a group of men, who belonged to the same gang, approached two men on a nearby street because one of the two men was wearing a red shirt, which was the color of a rival gang. One of the two men, Mario Gallegos, was able to escape, and he testified at trial as the State's sole eyewitness. The other man, Alan Oliva, who was wearing the red shirt, was beaten to death. The State's evidence included a videotaped confession by defendant describing his role in the offense, in which he admitted that he was the first person to approach the two men, that he was the one who demanded to know their gang affiliation, and that he kicked the murder victim in the head after the victim was down on the ground. The State's evidence also included testimony by fellow gang member Kates, concerning statements made by two of the attackers at a subsequent gang meeting attended by defendant. Defendant's statement to the police and Kates's testimony varied from each other, in that defendant stated to the police that there were six to eight men and that they exited a party to approach the murder victim and the victim's companion, while Kates reported that two of the attackers, Ramirez and Guerrero, claimed that they exited a vehicle with defendant and that they were the only three men to approach the murder victim and that the victim was alone.

*Colon*, 2018 IL App (1st) 160120, ¶ 6.

On direct appeal, Petitioner argued six claims.[1] *See Colon*, 2018 IL App (1st) 160120, ¶ 2. Of relevance to the instant case, two of those claims were: (1) the trial

---

[1] Petitioner's six claims on direct appeal were: (1) the trial court erroneously allowed testimony from Wayne Kates about statements by fellow gang members made during a gang meeting, at which Petitioner was present; (2) the trial court erroneously allowed the State to introduce gang affiliation evidence, including expert testimony; (3) the trial court erroneously overruled defendant's objection to the testimony of Mario Gallegos, the only eyewitness, who identified Petitioner as one of two people in a lineup who "kind of look like the people that were there"; (4) the trial court failed to suppress his confession where officers did not inform him that he could stop the questioning at any time; (5) his sentence of 40 years was excessive; and (6) his 40–year sentence was disproportionate to codefendant Gary Sam's 30–year sentence. (Dkt. 16-4, pg. 23-46.)

court erred when it denied his pretrial motion to suppress his videotaped statement because he was not informed that he had the ability to end the interrogation at any time; and (2) his sentence of 40 years' imprisonment is unconstitutionally excessive. Rejecting these claims, as well as Petitioner's other claims, the state appellate court affirmed the conviction and the sentence. *Id.* Petitioner's petition for leave to appeal (PLA), raising essentially the same claims (Dkt. 16-7), was denied by the Illinois Supreme Court. *People v. Colon*, 108 N.E.3d 883 (Ill. 2018) (Table). He filed a petition for a writ of certiorari in the United States Supreme Court, which denied certiorari. (Dkt. 16-3; Dkt. 16-8.) He then filed the federal habeas petition currently before this Court. (Dkt. 1.)

## DISCUSSION

Petitioner's § 2254 petition argues two claims: (1) his Fifth Amendment right against self-incrimination was violated when police officers failed to advise him that he could end the interrogation at any time; and (2) his 40-year sentence is unconstitutional. (Dkt. 1, pg. 18-25.) Neither claim, as explained below, warrants federal habeas relief.

**A.  Standard of Review**

With respect to claims adjudicated on the merits by a state court, a federal habeas court's review is governed by 28 U.S.C. § 2254(d). Federal habeas relief is unavailable for such claims "unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision will … be contrary to [Supreme Court] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases … [or] … confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [thei]r precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). For a state court decision to be an unreasonable application of clearly established federal law, it must be "objectively unreasonable." *Felton v. Bartow*, 926 F.3d 451, 464 (7th Cir. 2019) (citing *Williams*, 529 U.S. at 411). "'Unreasonable' in [this] context ... means something ... lying well outside the boundaries of permissible differences of opinion." *McGhee v. Dittmann*, 794 F.3d 761, 769 (7th Cir. 2015) (citation omitted). The state court decision must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). As the Supreme Court recently reiterated, "[t]he writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Harrington*, 562 U.S. at 102).

## B. *Miranda* Warnings

Although § 2254(d)'s deferential review standard usually applies when a state court addressed the merits of a federal claim, the standard of review that applies in this case is unclear due to the way the state courts addressed Petitioner's *Miranda* claim. When applying § 2254(d)'s deferential standard of review, this Court must "'look to … the 'last reasoned state–court decision'" addressing the claim. *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991)). In Petitioner's case, the state appellate court on direct appeal, *Colon*, 2018 IL App (1st) 160120, was the last reasoned state court decision insofar as the state supreme court summarily denied his PLA. *Colon*, 108 N.E.3d 883. But the state appellate court did not address Petitioner's constitutional challenge to his pre-confession warnings. After acknowledging that Petitioner challenged his confession on constitutional and state-law grounds, the court addressed only the state-law claim. *See Colon*, 2018 IL App (1st) 160120, ¶¶ 56-62.[2]

The state trial court, however, provided a reasoned decision on Petitioner's federal claim when it denied his motion to suppress his videotaped confession. (Dkt.

---

[2] On direct appeal, Petitioner noted several Illinois decisions holding that, though the accused has the right to stop questioning, *Miranda* does not require this right be expressly stated. (Dkt. 16-4, pg. 33-34.) He urged the state appellate court to instead follow more recent cases from courts outside Illinois that interpreted *Miranda* as requiring officers to expressly convey this right. *Id.* at 34 (citing *Beasley v. United States*, 512 A.2d 1007, 1013 (D.C. 1986), *McClinnahan v. United States*, 454 A.2d 1340, 1346 (D.C.1982)). Supporting this argument, he asked the state court to extend the Illinois Supreme Court's decision in *People v. McCauley*, 645 N.E.2d 923, 929 (Ill. 1994), which held that, under the Illinois Constitution, interrogating officers cannot

5

16-8, pg. 72-73.) But whether this Court applies § 2254(d)'s deferential standard of review to the trial court's decision, or reviews the claim *de novo* because the state appellate court did not address it, is unclear.[3] Regardless which review standard applies, the state trial court's analysis was correct; this Court agrees with it; and federal habeas relief is unavailable for this claim even under *de novo* review, the most lenient review standard available to Petitioner. The trial court stated the following:

> THE COURT: Thank you.
>
> I had the opportunity to review the disk that was tendered to me on more than one occasion. [I] have reviewed the transcript, which has also been tendered and will be made part of the record. I have reviewed the caselaw as submitted by both parties, and I have considered the arguments of Counsel.

---

withhold from the accused information that his attorney is attempting to meet with him. (Dkt. 16-4, pg. 35-36.) The state appellate court, upon determining *McCauley* did not apply to Petitioner's case, declined his invitation to extend it. *Colon*, 2018 IL App (1st) 160120, ¶ 62 The state appellate court, however, never addressed Petitioner's argument that *Miranda*, which relies on the federal constitution, should be interpreted as requiring an express warning that the accused can stop the interrogation. *Id.*

[3] The Seventh Circuit has gone in different directions as to whether § 2254(d) applies to a state trial court's reasoning when the state appellate court, though presented with a federal claim, does not address it. In T*homas v. Clements*, 789 F.3d 760 (7th Cir. 2015), the Seventh Circuit reiterated that "'[u]nless a state-court opinion adopts or incorporates the reasoning of a prior opinion, 'AEDPA generally requires federal courts to review one state decision,'" thus resulting in *de novo* review of a claim not addressed by the state appellate court. *Id.* at 766 (quoting *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012)). In *Atkins v. Zenk*, 667 F.3d 939 (7th Cir. 2012), however, the Seventh Circuit applied § 2254(d) to a state trial court decision, explaining: "The trial court addressed both deficient performance and prejudice, while the appellate court limited its analysis to deficient performance. Because both prongs have been addressed by Indiana state courts, in one form or another, the deferential standard of review set out in § 2254(d) applies to both." *Id.* at 944. This Court need not decide which review standard applies, since the trial court's analysis of the *Miranda* claim was not simply reasonable, but also correct; under either standard, this Court reaches the same result.

6

> I am prepared to give my findings of fact and conclusions of law. I find that at the time of the–the defendant was initially interviewed, that the detective told the defendant that he had the right to remain silent; that anything he said could be used against him in court. He asked the defendant if he understood that, and the defendant indicated that, yes, he did. The officer detective informed the defendant that he had the right to an attorney and that he could not -- if he could not afford an attorney, he would be given one free of charge. The defendant indicated that he understood that. And the detective also told the defendant that he had the right to have an attorney with him during any questioning. He asked the defendant if he understood that. The defendant replied that, yes, he did. The Court finds that those are sufficient *Miranda* warnings. They are time specific, informed the defendant he had the right to an attorney during the questioning at that time. The motion to suppress statement is denied.

(Dkt. 16-8, pg. 72-73.)

In *Miranda*, the Supreme Court addressed the application of the Fifth Amendment right against compulsory self-incrimination to custodial interrogation, and set out "to give concrete constitutional guidelines for law enforcement agencies and courts to follow." *Miranda*, 384 U.S. at 441-42; *see also* U.S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself ..."). After discussing in detail the information an individual must receive before an interrogation, the Court concluded:

> To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed

>for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Miranda*, 384 U.S. at 478-79.

The *Miranda* Court made clear that a suspect has "the right to cut off questioning," and "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-74. But the Court did not require that this right be expressly conveyed to the accused. *See Id.* Later Supreme Court cases reiterated that "*Miranda* prescribed the following *four* now-familiar warnings:

>'[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'

*Florida v. Powell*, 559 U.S. 50, 59-60 (2010) (quoting *Miranda*, 384 U.S. at 479); *see also Colorado v. Spring*, 479 U.S. 564, 567, n.1 (1987).

While a suspect has the "[o]pportunity to exercise these rights … throughout the interrogation," *Miranda,* 384 U.S. at 479, "[n]either the Supreme Court nor the Seventh Circuit has ever required *Miranda* warnings to include such a statement." *United States. ex rel. Chama v. Gramley*, No. 87 C 2305, 1987 WL 20123, at *2 (N.D. Ill. Nov. 18, 1987) (Holderman, J.) Courts that have addressed this issue have all determined that the right to stop the interrogation need not be expressly explained. *See Engle v. Lumpkin*, 33 F.4th 783, 795 n.34 (5th Cir. 2022) ("After all, the *Miranda* Court made clear that the right to terminate police questioning is of a constitutional dimension (even though the police are not required to warn the defendant that he has

8

such a right)"; *United States v. Crumpton*, 824 F.3d 593, 610–11 (6th Cir. 2016) ("a defendant need not be informed of a right to stop questioning after it has begun") (quoting *United States v. Lares–Valdez*, 939 F.2d 688, 689 (9th Cir. 1991)); *United States v. Alba*, 732 F. Supp. 306, 310 (D. Conn. 1990) ("the failure to specifically so advise [of the ability to stop the interrogation] does not constitute a violation of his fifth amendment right"); *see also* 2 Wayne R. Lafave, et al., CRIMINAL PROCEDURE § 6.8(d), n.100 (4th ed. Nov. 2021 update) (collecting cases).

Accordingly, the state trial court's determination that the warnings Petitioner received—which included the four enumerated warnings quoted above—"[we]re sufficient *Miranda* warnings," (Dkt. 16-8, pg. 72-73), was neither unreasonable, nor incorrect. Petitioner cannot establish that the warnings he received violated his Fifth Amendment right against self-incrimination no matter whether this Court reviews his claim under § 2254(d)'s deferential standard of review or *de novo*. Claim One is without merit and denied.

**C.  Sentencing**

Petitioner argues his 40-year imprisonment term is unconstitutional because: (1) the state trial court did not adequately consider that he was only 20 years old at the time of the offense, and (2) his sentence was five to ten years more than his older, more culpable coconspirators. (Dkt. 1, pg. 22-25.)

Respondent contends Petitioner's sentencing claims are procedurally defaulted since he never presented them to the Illinois Supreme Court. (Dkt. 15, pg. 9-11.) According to Respondent, though Petitioner's PLA challenged his sentence, it did so

9

only on state-law grounds. *Id.* Petitioner's reply brief agrees. "Colon concedes that this claim was not fully and fairly presented to the Illinois courts." (Dkt. 19, pg. 1.) Petitioner asks this Court "to stay proceedings in this case and give Pablo Colon a chance to return to the Illinois courts to file a successive post-conviction petition and develop this issue." *Id.* at 10. According to Petitioner, "law as to the application of the eighth amendment and/or the Illinois constitution's disproportionate penalty clause is still evolving," and future cases may demonstrate, or more clearly demonstrate, that his sentence is unconstitutional. *Id.* at 1. Although Petitioner wants to stay his federal case to explore his sentencing claims further in state court, as explained below, doing so is unnecessary for this Court's resolution of the claim.

Before addressing Petitioner's sentencing claims, the Court first notes that it is unclear if they are procedurally defaulted.[4] But the Court need not answer the procedural-default question. Section 2254 expressly allows a district court to deny "a

---

[4] Both Petitioner's brief on direct appeal and his PLA argued that his sentence was unlawful based on his young age of 20 at the time of his offense, and the disparity between his sentence and the sentences of codefendants. (Dkt. 16-4, pg. 39-48 (direct appeal); Dkt. 16-7, pg. 4-5, 12-15, 21 (PLA)). His brief on direct appeal more clearly set out the federal law supporting his claims. (Dkt. 16-4, pg. 45-46) (citing *People v. Roper*, 543 U.S. 551 (2005), and *Miller v. Alabama*, 567 U.S. 460 (2012) (cases holding that the Eighth Amendment's bar against cruel and unusual punishment prevents imposing a death or mandatory life sentence for defendants who were juveniles (under 18) at the time of their offenses). Petitioner's PLA cited no cases supporting his challenges to his sentence. (Dkt. 16-7, pg. 12-15, 21.) But the PLA did ask the state supreme court to review his sentence under "constitutional and statutory guidelines," *id.* at 4-5, and argued both that he was only 20 years old at the time of the murder and that his sentence of 40 years' imprisonment for first degree murder was ten years more than "his older, more culpable codefendant Gary Sams." *Id.* at 12, 21. Whether Petitioner's PLA fairly presented the facts and law of his constitutional challenges to his sentence is thus unclear. *See Baldwin v. Reese*, 541 U.S. 27, 31-33 (2004).

writ of habeas corpus … on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." § 2254(b)(2); *see also Brown v. Watters*, 599 F.3d 602, 609–10 (7th Cir. 2010) (federal courts may avoid complicated procedural default issues where the merits are clearer) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The merits of Petitioner's sentencing challenges are much clearer than the procedural-default issue.

1. **Petitioner's Challenge to the Disparity Between His Sentence and the Sentences of Codefendants is Not Cognizable For Federal Habeas Review**

Petitioner's argument about the disparity between his sentence of 40 years' imprisonment and the sentences of his coconspirators Gary Sams (30 years) and Marco Ramirez (35 years), (Dkt. 1, pg. 22, 25), does not present a federal constitutional issue. Under § 2254(a), federal courts may entertain a habeas petition by a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 670-68 (1991).

Although Illinois courts have held that "[s]imilarly situated individuals must not be given arbitrary or unreasonably disparate sentences," *People v. Burt*, 658 N.E.2d 375, 390 (Ill. 1995) (citing *People v. Godinez*, 434 N.E.2d 1121, 1126 (Ill. 1982)); *People v. Moss*, 792 N.E.2d 1217, 1235 (Ill. 2001), this is not a constitutional requirement. Under the United States Constitution, the Eighth Amendment's proscription against "cruel and unusual punishments," U.S. Const. amend. VIII,

prohibits only "'a sentence that is grossly disproportionate to the severity of the crime.'" *Ewing v. California*, 538 U.S. 11, 21 (2003) (cite omitted). When "determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime[, a] court must begin by comparing the gravity of the offense and the severity of the sentence." *Graham v. Florida*, 560 U.S. 48, 60 (2010). Only when this "'threshold comparison ... leads to an inference of gross disproportionality,' [should] the court … then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* at 60 (cite omitted).

"[W]hether [a defendant's] sentence is 'disproportionate' to those of his co-defendants is not a pertinent question to ask [for Eighth Amendment analysis], because we have a system of individualized sentencing which takes into account factors other than the type of crime, such as the criminal history of the particular defendant and the specific circumstances of the crime." *United States v. Cavender*, 228 F.3d 792, 803 (7th Cir. 2000) (citing *Solem v. Helm*, 463 U.S. 277, 291 (1983)). "The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." *Williams v. Illinois*, 399 U.S. 235, 243 (1970); *Dellinger v. Bowen*, 301 F.3d 758, 767-68 (7th Cir. 2002) (different sentences for similarly situated defendants convicted of the same offense is not a constitutional violation); *see also Sanchez v. Davis*, 994 F.3d 1129, 1151 (9th Cir. 2021) (noting that Supreme Court cases addressing the Eighth Amendment's proportionality principle do not require

12

that defendants convicted of the same crime in the same case receive similar sentences).

Petitioner's claim that the disparity between his sentence and his coconspirators' sentences does not present a constitutional issue.[5] Federal habeas relief is thus unavailable for this claim.

### 2. Petitioner's Age at Time of Offense

With respect to Petitioner's claim that the trial court did not sufficiently consider his young age of 20 years old when he committed the offense, which arguably is a constitutional issue, the state appellate court's decision addressing this issue was neither "contrary to" nor "an unreasonable application of clearly established federal law as determined by the Supreme Court." § 2254(d)(1). The Illinois Appellate Court noted that the sentencing range for Petitioner was between 20 and 60 years' imprisonment and that the trial court sentenced him exactly in the middle. *Colon*, 2018 IL App (1st) 160120, ¶ 65 (citing 730 ILCS 5/5–4.5–20(a)). The state appellate court further observed the trial court considered Petitioner's age, along with other factors, before sentencing him. *Id.* at ¶¶ 65-66.

---

[5] Although this Court denies Petitioner's disparate-sentence claim as not cognizable for federal habeas relief, the Court notes that his characterization of his coconspirators as "more culpable" is not how the state courts described his role in the offense. (Dkt. 1, pg. 22.) Both the state trial and appellate courts considered Petitioner more culpable, even though he only kicked the victim as opposed to stabbing or beating him with a baseball ball, since Petitioner initiated the incident, was still a gang member, and "exhibited a certain amount of relish in describing what he did." *Colon*, 2018 IL App (1st) 160120, ¶¶ 65, 69.

13

Specifically addressing Petitioner's argument concerning Supreme Court cases about cruel and unusual punishments for juvenile offenders (under the age of 18), the state appellate court held the following:

> At the time of the offense, defendant was 20 years old, which is years away from juvenile status. "When the legislature draws lines with respect to age, there will always be people who are close to the line." [*People v.*] *Jones*, 2018 IL App (1st) 151307, ¶ 73, 422 Ill. Dec. 627, 103 N.E.3d 991. Defendant asks us to consider a difference of years—not two days or two weeks, but years from juvenile status. "Since there will always be a defendant close to the legislative line, the statute at issue provided the judiciary with the ability to exercise discretion in fashioning an appropriate sentence within a particular range." *Jones*, 2018 IL App (1st) 151307, ¶ 73, 422 Ill. Dec. 627, 103 N.E.3d 991. In the case at bar, the trial court utilized that discretion to fashion an appropriate sentence.

*Id.* at ¶ 68. This analysis was neither contrary to, nor an unreasonable application of clearly established federal law as determined by the Supreme Court.

The Supreme Court has held that certain sentences are cruel and unusual punishments for defendants who were juveniles when they committed their offenses. *See Roper v. Simmons*, 543 U.S. 551, 575 (2005) ("the death penalty cannot be imposed upon juvenile offenders"); *Graham v. Florida*, 560 U.S. 48, 82 (2010) (mandatory life sentence for a nonhomicidal offense committed by a juvenile is cruel and unusual punishment): *Miller v. Alabama*, 567 U.S. 460, 489 (2012) (mandatory life sentences for those who were juveniles when committing murder violate the "principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment"). According to the Supreme Court, based on scientific and sociological studies, as well as common sense: "'A lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults

14

and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' ... [J]uveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." *Roper*, 543 U.S. at 569; *see also Miller*, 567 U.S. at 471.

The Supreme Court decisions, however, all considered "juveniles" to be under the age of 18. *See Miller*, 132 S. Ct. at 2460 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'"); *Graham*, 560 U.S. at 74-76 ("Because 'the age of 18 is the point where society draws the line for many purposes between childhood and adulthood,' those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime.") (cite omitted); *Roper*, 543 U.S. at 568 ("A majority of States have rejected the imposition of the death penalty on juvenile offenders under 18, and we now hold this is required by the Eighth Amendment."). Noting arguments similar to Petitioner's—that the traits of a juvenile do not necessarily end at 18—the Supreme Court explained:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. ... The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is ... the age at which the line for death eligibility ought to rest.

*Roper*, 543 U.S. at 574. Since *Roper*, the Supreme Court has not indicated that the

15

dividing line between juvenile and adult offenders should be beyond the age of 18. Nor has the Court stated that using a chronological age should be discontinued. *See Miller*, 132 S. Ct. at 2460; *Graham*, 560 U.S. at 74-76.

Based on *Roper*, *Graham*, and *Miller*, and the lack of Supreme Court cases departing from their holdings, the state appellate court's rejection of Petitioner's request to consider his age of 20 years old at the time of his offense the same as an 18-year-old juvenile was not unreasonable. *See United States v. Marshall*, 736 F.3d 492, 498–99 (6th Cir. 2013) ("The Supreme Court has recognized that drawing lines based on chronological age is a not-entirely-desirable but nonetheless necessary approach."). Petitioner cannot satisfy § 2254(d)'s deferential standard of review this Court must afford the state appellate court's decision to obtain federal habeas relief.

This Court recognizes that several judges and courts have indicated that the line between juvenile and adult for sentencing purposes should not be strictly set at the chronological age of 18. *See Ruiz v. United States*, 5 F.4th 839, 843 (7th Cir. 2021) (Wood, J.) (dissenting from denial of rehearing en banc) ("there is nothing magic about the age of 18"); *People v. Wilson*, 2022 IL App (1st) 192048, ¶ 87 (unpublished) ("In recent years, … our supreme court has acknowledged that young adults—at least those who were 20 years of age or younger at the time of their crimes—may rely on the evolving neuroscience and societal standards underlying the rule in *Miller* to support as-applied challenges to life sentences brought pursuant to the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11)") (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (Ill. 2015). Petitioner's contention that "law as

16

to the application of the eighth amendment and/or the Illinois constitution's disproportionate penalty clause is still evolving," may be correct. (Dkt. 19, pg. 1.)

But as noted above, this Court's review of the state courts' rejection of his constitutional challenge to his sentence is limited to Supreme Court "precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (2011) (cite omitted); *see also McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). Supreme Court law at the time of the state appellate court's decision did not require that Petitioner's age of 20 years old at the time of his offense be considered when determining the constitutionality of his 40-year sentence for murder.

Accordingly, Petitioner's sentencing claims, like his Fifth Amendment claim, warrant no federal habeas relief. His § 2254 petition is thus denied.

**D.     Notice of Appeal Rights and Certificate of Appealability**

Petitioner is advised that this is a final decision ending his case in this Court. If he wishes to appeal, he must file a notice of appeal in this Court within thirty days of the entry of judgment in accordance with Fed. R. App. P. 4(a).

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If he seeks to appeal this decision, he should file a notice of appeal and request a certificate of appealability from the Seventh Circuit.

**CONCLUSION**

Petitioner's habeas corpus petition (Dkt. 1.) is denied. Any pending motion is denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: terminate Teri Kennedy as Respondent; enter Mindi Nurse, Pontiac Correctional Center's acting warden, as Respondent; alter the case caption to *Colon v. Nurse*; and enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 3, 2022